IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LAMPTON J. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17−cv–0656−MJR |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| LISA KREBS, | ) | |
| VENERIO SANTOS, | ) | |
| ARNEL A. GARCIA, | ) | |
| STEVE MEEKS, and | ) | |
| LISA PRATCHER | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Lampton J. Turner, an inmate in Centralia Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests declarative relief, injunctive relief, and compensatory and punitive damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>  (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>  (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## **The Complaint**

Plaintiff alleges that he tripped and fell while returning from mail call on June 27, 2016. (Doc. 1, p. 3). The fall injured both hands and his wrist. *Id.* Plaintiff was seen by Garcia, who he alleges was wearing Santos' lab coat, a month later on July 27, 2016. *Id.* Plaintiff complained of numbing, tingling, aching, and swelling in his wrists and hands, and Garcia diagnosed him with inflammation and prescribed Prednisone (a steroid) and Robaxin (a muscle relaxer). *Id.* Plaintiff followed up with Garcia on October 26, 2016, complaining of the same pain. *Id*. Garcia renewed his prescriptions. *Id.*

Plaintiff put in a sick call slip on November 2, 2016 after not receiving refills. *Id.* The health care unit required Plaintiff to pay a co-pay and Plaintiff refused and filed a grievance. *Id.*

Plaintiff began experiencing dizziness, tingling, skin crawling, headaches, as well as continuing pain in his hands and wrist by November 10, 2016. *Id.* Plaintiff was sent to health care, where he requested pain medication. (Doc. 1, p. 4). The unnamed nurse on duty refused to give him any, although she put him in to see the doctor. *Id.* On November 12, 2016 Plaintiff saw Santos. *Id.* Santos thought his symptoms may be explained by allergies or as a side effect of the prednisone. *Id.* Santos ordered a blood test, but also refused to give Plaintiff any pain medication or an x-ray. *Id.*

On November 17, 2016, Plaintiff met with Santos again to go over the results of his blood work. (Doc. 1, pp. 4-5). Santos showed Plaintiff the results and stated that everything looked "good, normal." (Doc. 1, p. 5). Plaintiff told Santos that he was still experiencing numbing, tingling, aching, swelling, and skin crawling, and asked for an x-ray. *Id.* Santos denied that anything was wrong with Plaintiff and refused to provide any further treatment. *Id.* Plaintiff sent a request to health care administrator Lisa Krebs regarding this incident the same day. *Id.*

On November 25, 2016, Plaintiff noticed that his hand was making a crunching sound and experienced pain between his thumb and index finger. (Doc. 1, p. 6). Plaintiff also experienced cramps while writing and brushing his teeth. *Id.* Plaintiff continued to experience back pain, neck pain, and dizziness. *Id.*

Plaintiff's mother followed up with Krebs on November 30, 2016, asking why the contusion on Plaintiff's right hand hadn't received medical treatment. *Id.* Krebs responded that the hand would have to heal on its own. *Id.* Plaintiff also followed up with Krebs, Santos, and Garcia via kites on December 18, 2016. *Id.*

Plaintiff received his medical records on December 21, 2016 and noticed that his BUN/CREAT ration was out of range. *Id.* Plaintiff alleges that his godmother is a nurse and she

told his mother that a BUN/CREAT ratio of 8.1 is dangerously low and that the prison should have informed Plaintiff when his ratio dropped from 9.1 to 8.1. (Doc. 1, pp. 7-8). Plaintiff tried to tell Krebs about his low BUN/CREAT ratio and request a blood pressure check, but she refused to talk to him. (Doc. 1, p. 8). On January 26, 2017, Plaintiff received a response to his grievance from health care about this issue, noting that his ratio was "out of range" but declining to take action because it was not "panic level." (Doc. 1, p. 13).

Plaintiff was referred to the doctor again on December 22, 2016 for nerve pain in both arms, a cyst, crunching in his hand, and hand, wrist and back pain. (Doc. 1, p. 6). Plaintiff saw Santos the next day and complained about the symptoms in his right hand. (Doc. 1, p. 7). Plaintiff asked if Santos could hear the crunching and the raised his hand from his lap. *Id*. Santos flinched and hit Plaintiff's injured hand. *Id.* Plaintiff put both hands in the air because it looked like Santos was preparing to strike him again. *Id.* Santos told Plaintiff not to touch him. *Id.* Plaintiff apologized and told Santos he wasn't trying to touch him, he just wanted to show Santos his injured hand. *Id.* Santos calmed down and the examination continued. *Id.* Santos noted that Plaintiff had a cyst on his wrist. *Id.* He also pushed down on the affected area until Plaintiff said "ouch." *Id.* Santos then ordered an x-ray and ibuprofen. *Id.* Plaintiff's hand throbbed for 3 days after the examination. *Id.* Plaintiff reported the incident to internal affairs; Lt. Robinson investigated based on Plaintiff's letter to Krebs. (Doc. 1, p. 9). Plaintiff requested a restraining order against Santos. (Doc. 1, p. 14).

Plaintiff's mother contacted Lisa Pratcher in December 2016 to complain about Plaintiff's medical issues. (Doc. 1, pp. 9-10). Pratcher told Plaintiff's mother she'd look into it but then Pratcher stopped replying. (Doc. 1, p. 10). Pratcher eventually referred Plaintiff's mother to Steve Meeks, the IDOC director for the Southern District. *Id.* Plaintiff's mother

informed Meeks and Pratcher about Plaintiff's pain and suffering and low BUN/CREAT ratio. *Id.* Meeks also eventually stopped responding to Plaintiff's mother. *Id.* At one point, Plaintiff's mother was referred back to Krebs, who was rude and stated that Plaintiff would only be given Tylenol and ibuprofen. (Doc. 1, pp. 10-11).

On January 15, 2017, Plaintiff grew dizzy while urinating and passed out, hitting his head. (Doc. 1, p. 11). Plaintiff was experiencing frequent urination, pain in his kidney area, and shaking. (Doc. 1, p. 12). Santos examined Plaintiff and noted that his right ear was full of wax; Santos ascribed the fainting to the blocked ear. *Id.* Plaintiff alleges that he complained of being light-headed as early as November 10, 2016 and that he had passed out previously on November 16, 2016, but that there was no wax build-up during those times. *Id.* Santos only gave Plaintiff ear drops, despite Plaintiff's requests for pain treatment. *Id.*

While taking the ear drops, Plaintiff experienced dizziness on January 18, 2017. *Id.* Plaintiff alleges Santos shouldn't have prescribed him the ear drops for dizziness because the label instructed patients to speak to their doctor if they experienced dizziness. *Id.* Plaintiff had an ear flush on January 21, 2017 that released a ball of wax the size of a penny. (Doc. 1, p. 13). Plaintiff followed up with Nurse Brewer on February 11, 2017, and she could not release any more wax, but told him that he had hard wax in his left ear that would need to be scraped out. (Doc. 1, p. 15). But when Plaintiff met with Santos a few days later, Santos denied that there was any wax in Plaintiff's ear. *Id.*

On February 6, 2017, Plaintiff saw Santos against regarding the pain in his kidney area. (Doc. 1, p. 14). Santos conducted an exam, in which he pressed on Plaintiff's kidneys. *Id.* When Plaintiff expressed pain, Santos told him he was faking it because Santos had been pushing on muscle. *Id.* Santos told Plaintiff that all of his labs were normal. *Id.* Plaintiff asked about his

BUN/CREAT ratio and asked for an MRI for his hand. *Id.* Santos denied Plaintiff an MRI and told him to leave. (Doc. 1, pp. 14-15).

Plaintiff saw Santos again 3 days later on February 14, 2017, and told Santos he was still in pain and that he needed a CAT scan to assess his BUN/CREAT ratio. (Doc. 1, p. 15). Santos became irate and told Plaintiff that he was a healthy kid and that he would not be ordering a CAT scan. *Id.*

Plaintiff also alleges that Garcia and Santos repeatedly and deliberately confused him about who was who. (Doc. 1, p. 12-13).

Plaintiff articulates a number of Wexford policies that he believes violate his constitutional rights. He alleges that Wexford deliberately ignored his blood test results. (Doc. 1, p. 13). He also alleges that Wexford has a policy or protocol to give inmates Tylenol and Ibuprofen regardless of the nature and source of their pain. (Doc. 1 p. 16). He alleges that Wexford employees have denied him pain medication on multiple occasions as a result of these policies. *Id.* Plaintiff also alleges that Wexford has a policy of assessing a "panic level" and that their staff has been instructed to ignore serious medical needs until the panic level is reached, denying Plaintiff preventative care. *Id.* Further, Plaintiff alleges that Wexford has a policy of instructing employees to display callous behavior when prisoners do not pay a co-pay. *Id.* Plaintiff also alleges that Wexford has a policy of only providing ear drops for dizziness. *Id.* They have a policy against having a 24 hour doctor or an evening doctor. *Id.* They also have a policy of not referring prisoners to outside specialists in a timely matter for serious medical needs when the health care unit doesn't have adequate medication, equipment or professional capacity. *Id.* Finally, Plaintiff alleges that Wexford does not provide special diets to address blood work that is out of range. *Id.*

**Discussion**

Plaintiff has provided the Court with 7 proposed legal claims.[1] The Court finds it practicable to adjust Plaintiff's claims as follows. The parties and the Court will use these new designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1 –** Garcia was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when he refused to adequately treat Plaintiff's hand and wrist pain that resulted from a June 27, 2016 fall and refused to respond to kites about Plaintiff's BUN/CREAT ratio;
>
> **Count 2 –** Santos was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when he failed to address or order further testing on Plaintiff's dizziness, tingling, skin crawling, headaches, continuing pain in his hands and wrist, low BUN/CREAT ratio, kidney pain, and ear wax problem;
>
> **Count 3 –** Meeks, Pratcher, and Krebs were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when they refused to intervene after being informed of Plaintiff's difficulties securing treatment for his various medical ailments;
>
> **Count 4 –** Wexford Health Sources had 7 unconstitutional policies, protocols, or customs that violated Plaintiff's constitutional rights, including 1) prescribing OTC painkillers only; 2) requiring certain conditions to reach a "panic" level prior to providing preventative care; 3) refusing to see inmates if they don't pay a co-pay; 4) only providing ear drops for dizziness and wax build up; 5) refusing to staff a 24 hour doctor or evening doctor; 6) refusing to refer patients to an outside specialist; 7) refusing to provide special diets when blood results are out of range.

Plaintiff has also attempted to bring other Counts,[2] but for the reasons elucidated below, these claims do not survive threshold review.

---

[1] Plaintiff mentioned other employees by name throughout his statement of claim, but did not include them either in his list of defendants or his "legal claims" section. The Court therefore concludes that Plaintiff did not intend to bring claims against these individuals. If Plaintiff did intend to name others not discussed in the analysis portion, he should file an amended complaint explaining exactly how those individuals participated in the constitutional violation and include all claims, new and old, that he wishes to address.

[2] Plaintiff also references "Rights after indictment Section 12 Right to Remedy," "Justice Tort Claim," and the due process clause in his "legal claims" section. The Court is unfamiliar with any statutes that would provide relief in these circumstances by the name of either "Rights after Indictment" or "Justice Tort Claim." Furthermore,

**Count 5** – Santos used excessive force against Plaintiff in violation of the Eighth Amendment when he slapped Plaintiff's injured hand;

**Count 6** – Garcia, Santos, and Krebs committed medical malpractice when they refused to treat Plaintiff's various conditions, in violation of Illinois state law;

**Count 7** – Santos retaliated against Plaintiff for grievances he filed by denying him medical treatment and physically striking him during an exam in violation of the Eighth Amendment.

As to Plaintiff's **Count 1**, prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

---

although the Fourteenth Amendment makes the Eighth Amendment applicable to the states, it does not create an independent claim for a due process violation separate from the Eighth Amendment's proscription against cruel and unusual punishment. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims'") (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

To the extent that Plaintiff has any legal claims that he believes are not encompassed by the Court's divisions into counts, those claims are dismissed without prejudice to further amendment explaining the basis for those claims.

"Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may also be shown where medical providers persist in a course of treatment known to be ineffective. *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Plaintiff has alleged that he has suffered nearly a year of pain due to issues with his wrists and hands. Although the Complaint is a little unclear on this point, Plaintiff also appears to be alleging that he suffered some serious side effects from the medication originally prescribed to address his wrist pain and that those side effects have also not been appropriately addressed. Plaintiff also alleges that he may have an un-diagnosed kidney problems and waxy build up that causes fainting. It may prove with further factual development that Plaintiff's various medical conditions are not related or intertwined, but at this time, the Court finds that Plaintiff has made a plausible claim that his medical issues constitute a serious medical need.

In **Count 1**, Plaintiff alleges that Garcia continued his earlier prescriptions even after Plaintiff told him that they were not working. Garcia then declined to get involved in his care again after Plaintiff wrote him kites to tell him he was still experiencing symptoms of what could have been a side effect of the medication. On these facts it is plausible that Garcia was deliberately indifferent to Plaintiff's pain and suffering as a result of the under-treated wrist injury and that he knew about Plaintiff's subsequent symptoms but refused to take further action.

9

As the Complaint suggests that Garcia knew about Plaintiff's serious medical needs and refused to act, Plaintiff has stated a plausible claim against Garcia, and **Count 1** shall be allowed to proceed.

Likewise, in **Count 2**, Plaintiff alleges that every time he presented himself to Santos, Santos refused to provide adequate treatment and told Plaintiff that there was nothing wrong with him. Assuming that Plaintiff's allegations about the nature and severity of his symptoms are true, the refusal to address them is a plausible allegation of deliberate indifference. Therefore **Count 2** will be permitted to proceed as to Santos.

As to **Count 3** against Meeks, Pratcher, and Krebs, it does not appear that any of these defendants were directly involved in Plaintiff's care. However, Plaintiff's allegations make their personal involvement plausible. Personal involvement may be shown where an official is alerted to an excessive risk to inmate health or safety through a prisoner's grievances, and refuses to exercise the authority of his or her office. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Plaintiff has alleged that his mother repeatedly brought concerns over his health to those in authority, and that they refused to take action to address the situation. At this time, that is sufficient to allege personal involvement in Plaintiff's underlying deliberate indifference claims, and so **Count 3** will proceed against Meeks, Pratcher, and Krebs.

In **Count 4** Plaintiff alleges that Wexford Health Sources has multiple unconstitutional policies. Wexford may be liable under a municipality theory of liability. For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom'

attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)).

Of the 7 policies that Plaintiff has put at issue, he has not stated a claim in regards to 2 of them. Plaintiff alleges that Wexford has a policy of not providing treatment to inmates that have refused to pay a co-pay. That policy has repeatedly been upheld by the courts. *Hightower v. Godinez*, 524 F. App'x 294, 296 (7th Cir. 2013); *Poole v. Isaacs*, 703 F.3d 1024, 1026-27 (7th Cir. 2012). Plaintiff's claim against Wexford cannot rest on a policy requiring co-pays before providing non-emergency treatment. Plaintiff has also tried to sue Wexford on the grounds that they have not provided evening health care hours or a 24 hour doctor. But Plaintiff has not alleged that he was harmed by the policy. None of his complaints stem from waiting until regular health care hours for treatment. The Court finds that Plaintiff has not adequately alleged that the staffing policy harmed him and therefore he will not be allowed to proceed on that claim. The other 5 policies that Plaintiff alleges harmed him do appear to be related to the care he received, and so Plaintiff will be allowed to proceed against Wexford based on policies 1-2, 4, and 6-7.

All of Plaintiff's other claims will be dismissed. Plaintiff has alleged that he was a victim of excessive force in **Count 5**. The intentional use of excessive force by prison staff against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v.*

11

*McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff has not provided a plausible allegation that the force employed by Santos was used "maliciously and sadistically" for the purpose of causing harm. Plaintiff alleges that Santos became fearful when Plaintiff raised his hand, but calmed down when Plaintiff explained that he was not trying to strike him. Plaintiff also alleges that Santos then proceeded with the examination. On these facts it does not appear that Santos was trying to harm Plaintiff. It is much more plausible that Santos misunderstood Plaintiff's gesture, as Plaintiff himself implies. Additionally, a slap on the hand is a de minimis use of force. *See Hill v. Vannatta*, 123 F. App'x 723, 724 (7th Cir. 2005) (affirming district court's determination on 1915A screening that a slap causing redness and swelling was de minimis and insufficient to state a claim for excessive force). Accordingly, **Count 5** will be dismissed without prejudice for failure to state a claim.

Plaintiff also brings state law claims of "medical malpractice" against Defendants Garcia, Santos, and Krebs in **Count 6**. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294,

1299 (7th Cir. 1995)). While this Court has supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2017). A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action

13

is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits or reports. Therefore, the claim in **Count 6** shall be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavit(s), if he desires reinstatement of this claim. The certificate(s) of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavits/certificates, the dismissal of **Count 6** may become a dismissal **with prejudice.** *See* Fed. R. Civ. P. 41(b).

Finally, as to **Count 7** against Santos, to succeed on a First Amendment retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Here, although the Court presumes that filing grievances constitutes protected conduct, Plaintiff has not adequately alleged that his protected conduct was the motivating factor for the alleged retaliation. First, although Plaintiff submitted grievances that he filed, none of the grievances has a response specifically from Santos, and Plaintiff has not alleged that Santos knew about the grievances. If Santos did not know about Plaintiff's grievances, he could not have been motivated to retaliate on that basis, and Plaintiff has not identified another basis for such retaliation. Secondly, Plaintiff alleges that Santos slapped him because he filed grievances. Yet Plaintiff's own account of the incident implies that Santos slapped him because he believed that Plaintiff was getting aggressive, and that Santos calmed down and conducted an examination

after Plaintiff stated that he was just trying to show Santos his hand. Nothing about Plaintiff's account of that incident suggests that Santos was motivated to slap Plaintiff because of his grievance activity, and Plaintiff has not alleged that Santos raised his grievance activity during that visit. As Plaintiff has not adequately pleaded that his protected conduct was the motivating factor for the retaliation, this claim will be dismissed without prejudice for failure to state a claim.

## Pending Motions

Plaintiff's Motion for a Preliminary Injunction will be referred to Magistrate Judge Stephen C. Williams for immediate disposition. (Doc. 2). Plaintiff's Motion for Leave to Proceed IFP will be ruled on by separate order. (Doc. 3). Plaintiff's Motion for Appointment of Counsel will be referred to Judge Williams for disposition. (Doc. 4). As this Order directs the service on Defendants, Plaintiff's Motion for Service of Process at Government Expense is **DENIED** as **MOOT**. (Doc. 5).

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1-4** survive threshold review against Defendants Wexford, Krebs, Santos, Garcia, Meeks, and Pratcher. **Counts 5-7** will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical malpractice/negligence claim in **Count 6** against Defendants **Garcia, Santos, and Krebs**, Plaintiff shall file the required affidavit(s) pursuant to 735 Ill. Comp. Stat. §5/2-622, within 35 days of the date of this order (on or before August 14, 2017). Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health

professional, in compliance with §5/2-622.  Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **COUNT 6** may become a dismissal **with prejudice**.

Plaintiff's Motion for Service at Government Expense is **DENIED** as **MOOT**.  (Doc. 5).

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Wexford, Krebs, Santos, Garcia, Meeks, and Pratcher:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has

not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: <u>July 10, 2017</u>**

<u>**s/ Michael J. Reagan**</u>
**Chief Judge**
**United States District Court**