IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAMPTON J. TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-0656-MJR-SCW |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| LISA KREBS, | ) |
| VENERIO SANTOS, | ) |
| ARNEL A. GARCIA, | ) |
| STEVE MEEKS, | ) |
| and LISA PRATHER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

**A.   INTRODUCTION**

Lampton Turner brings this suit under 42 U.S.C. 1983 against Wexford Health Sources, Inc. (who contracts to provide medical services to inmates of the Illinois Department of Corrections) and various health care professionals and correctional officials.  Turner alleges that Defendants failed to property treat his medical conditions, including his hand and wrist pain and a blood test revealing an abnormal BUN/CREAT ratio.[1]  The Court's threshold Order (Doc. 8, p. 7) organized the surviving counts into three claims for deliberate indifference to medical needs and one claim, against Wexford, for unconstitutional policies, customs, and protocols (e.g., refusing to refer patients to outside specialists and prescribing only over-the-counter painkillers).

---

[1] This test checks levels of blood urea nitrogen and serum creatinine and can be useful in assessing kidney function and dehydration.

The case comes before the Court on two motions for summary judgment. Defendant Wexford moved for summary judgment (Docs. 63-64), Turner responded (Doc. 77), Wexford replied (Doc. 84), and Turner sur-replied (Doc. 90). Defendants Krebs, Meeks, and Prather moved for summary judgment (Docs. 74-75), Turner responded (Doc. 91), and Turner filed a subsequent submission (Doc. 113) containing his cumulative counseling summary, which has been considered by the Court. Both summary judgment motions are based on the assertion that Turner failed to exhaust his administrative remedies before filing this lawsuit.

On June 5, 2018, the Honorable Stephen C. Williams, United States Magistrate Judge, submitted a Report and Recommendation (R&R, Doc. 120), recommending that the undersigned District Judge deny Wexford's motion and partially grant/partially deny the other Defendants' motion. Turner timely objected to the R&R on June 21, 2018 (Doc. 123). None of the Defendants objected to the R&R. For the reasons explained below, the Court overrules Turner's objections and adopts Judge Williams' R&R.

**B.    OVERVIEW OF R&R**

Incarcerated at Centralia Correctional Center within the Illinois Department of Corrections (IDOC), Lampton Turner (Plaintiff) sues for violation of his federally-secured constitutional rights, seeking declarative relief, injunctive relief, and monetary damages. As noted above, Plaintiff alleges that Wexford and five individual Defendants were deliberately indifferent to his serious medical needs, tracing back to a June 2016 fall he suffered, in which he injured his hands and wrists. Plaintiff was treated by several healthcare professionals, including Defendants Dr. Garcia and Dr. Santos.

In prior Orders, the undersigned has described Plaintiff's history of treatment, whom he saw when, what medication he was given, what complaints he made (e.g., to Lisa Krebs, the former Healthcare Administrator at Centralia Correctional Center, to Steve Meeks, another IDOC Healthcare Administrator, and to Lisa Prather, a now-retired Regional Coordinator with the IDOC), and how Plaintiff claims his treatment was so deficient that it ran afoul of the Eighth Amendment's prohibition of cruel and unusual punishment. In his 24-page R&R, Judge Williams went into further detail of Plaintiff's history of medical issues as well as each grievance he filed regarding his treatment.

The Court need not repeat that history here. The R&R recommends that the undersigned *deny* both motions for exhaustion-based summary judgment with one exception -- Plaintiff's claims against Lisa Prather. In other words, Judge Williams found that Plaintiff sufficiently exhausted his administrative remedies against Wexford, Krebs, and Meeks, and failed to exhaust only as to Defendant Prather.

Timely objections having been filed, the undersigned reviews de novo the portion of the R&R to which Plaintiff specifically objected. **28 U.S.C. 636(b)(1); FED. R. CIV. P. 72(b); SOUTHERN DIST. OF ILLINOIS LOCAL RULE 73.1(b).** The undersigned can accept, reject, or modify Judge Williams' recommendations, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.* Plaintiff's objections are solely directed to the conclusion that he failed to exhaust his claims as to Defendant Prather. So the undersigned's review is confined to the claims against Prather. Review begins with the standards governing analysis of this issue.

C. APPLICABLE LEGAL STANDARDS

→ *Summary Judgment Standard*

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted), *citing* FED. R. CIV. P. 56(a). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).

A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. To survive summary judgment, the nonmovant must present more than a mere scintilla of evidence showing the existence of a genuine issue of material fact. *See Zuppardi v.*

*Wal-Mart Stores, Inc.*, **770 F.3d 644, 650 (7th Cir. 2014).** Stated another way, a scintilla of evidence supporting the nonmovant's position is not enough; "there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, **711 F.3d 794, 798 (7th Cir. 2013).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant (here, Plaintiff). *Srail v. Village of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Summary judgment is "not an appropriate occasion for weighing the evidence" and should not be granted if the evidence supports alternate inferences. *Dowden v. Polymer Raymond, Inc.*, **966 F.2d 1206, 1207-08 (7th Cir. 1992).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004),** *cert. denied,* **546 U.S. 1032 (2005).**

→   *Exhaustion Under the PLRA*

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending. *See Perez v. Wisconsin Dept. of Corr.*, **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page*, **291 F.3d 485, 488 (7th Cir. 2002).** If the inmate fails to exhaust before

filing suit in federal court, the court must dismiss the suit.  *See Jones v. Bock,* **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**[2]

The United States Court of Appeals for the Seventh Circuit requires strict adherence to the PLRA exhaustion requirement.  *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006).** "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).**  This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* **at 1025.**  The purpose of exhaustion is two-fold.  First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, **534 U.S. at 524.**  *See also Booth v. Churner*, **532 U.S. 731, 737 (2001).**

Because exhaustion is a prerequisite to suit, a prisoner must wait to commence litigation until he completes the established process; he may not file in anticipation of administrative remedies soon being exhausted. *Perez*, **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**  A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending.  *Perez*, **182 F.3d at 535.**

---

[2] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation.  *See* **FED. R. CIV. P. 12(d).**

The Seventh Circuit has held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41 (7th Cir. 2008)("Pavey I").** The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof. *Pavey*, **663 F.3d 899, 903 (7th Cir. 2011) ("Pavey II").** Where failure to exhaust has been raised as an affirmative defense (i.e., exhaustion is contested, as here), the court follows the sequence recommended in *Pavey I*, **544 F.3d at 742,** including a hearing on exhaustion, which was held in this case on May 30, 2018.

→ *Exhaustion under Illinois Law*

The exhaustion requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. *Jones*, **549 U.S. at 218.** As an inmate confined within an Illinois prison, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders, to properly exhaust his claims. **20 Ill. Admin. Code 504.800,** *et seq***.**

The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code 504.810(a).** If the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ... [who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board (ARB).

More specifically: "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code 504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code 504.850(f).**

The grievance procedures also allow an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO) who may determine that "there is a substantial risk

of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code 504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code 504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code 504.850(g).**

D. ANALYSIS

The R&R chronicles the grievances submitted by Plaintiff about his health care, including grievances dated:

November 2, 2016,
November 17, 2016,
November 22, 2016,
November 28, 2016,
November 29, 2016,
December 23, 2016,
and January 18, 2017.

At the *Pavey* hearing conducted on May 30, 2018, Judge Williams explored whether Plaintiff had filed an *additional* set of grievances between December 2016 and February 2017 (six grievances that were either not returned to Plaintiff or returned to him by the counselor as duplicates). Plaintiff testified regarding his various grievances, and he referred to the information in the cumulative counseling summary he provided in advance of the Pavey hearing which, by way of example, mentions a grievance returned to Plaintiff on February 15, 2017, labeled a duplicate grievance.

The Court heard testimony from Bart Toennies, a former grievance officer (currently a case work supervisor in charge of all counselors at the prison), who presented evidence regarding the way grievances related to medical care are handled at Centralia Correctional Center. Toennies also testified to the process the occurs if the ARB returns a grievance because the grievance lacks a response. Plaintiff testified regarding the grievances returned to him as duplicates of already-submitted grievances. Specifically, Plaintiff testified that five of them were directed against Defendants Prather, Meeks, and Wexford and returned to him as duplicates. Plaintiff further testified that he *discarded* the grievances returned to him as duplicates – in other words, he did not pursue them any further through the grievance process. Judge Williams concluded that Plaintiff did not exhaust all available administrative remedies as to Lisa Prather, because none of the *exhausted* grievances identified Prather by name or identified any action of an un-named person that could be attributed to Prather, and the cumulative counseling summary did not mention Prather. Judge Williams found that no evidence supported the contention that Plaintiff exhausted his claims as to Prather.

Plaintiff lodges two objections to the R&R, identified as Argument I and Argument II. In Argument I, he notes that he presented an affidavit (Doc. 91) opposing the Krebs/Meeks/Prather summary judgment motion and brief (Docs. 74-75). He says his affidavit "outweighs" Prather's motion. Furthermore, Plaintiff says he testified at the Pavey hearing about the additional grievances he filed which he claims mentioned Prather, and defense counsel did not object to his testimony, thereby *admitting* the accuracy of Plaintiff's testimony.

This argument reflects a basic misunderstanding of rules of civil procedure and evidence. Certain things in civil lawsuits are construed to be admissions. For instance, if a litigant fails to timely respond to a request to admit properly propounded in discovery, that can constitute an admission of the stated fact. But failing to jump up and object to testimony at a hearing is not necessarily an admission of the *veracity* of the testimony; it is usually a concession of the *admissibility* of the testimony.

It is often the case, whether in a civil trial or a Pavey hearing, that the trier of fact (the jury in the former instance, the judge in the latter) hears contradicting testimony from different witnesses and must decide which witness is telling the truth. In a run-of-the-mill car crash case, the plaintiff might testify that he was driving his car through a green light when the accident occurred and, bam, he was struck by the defendant's vehicle. Defense counsel does not have to *object* to that testimony. By failing to object, he has not admitted that the light was green for the plaintiff. He has simply conceded that the testimony is admissible – i.e., properly considered by the judge or the jury. He can wait and present his own witness to testify that other motorists saw the plaintiff drive through a *red* light just before the collision. Objections are properly made under the Federal Rules of Evidence and lodged at such things as irrelevant evidence or hearsay -- not disputed facts. The failure to object to a plaintiff's testimony in a Pavey hearing does not create an admission that supports the plaintiff's version of events.

Next, Plaintiff maintains that because Prather did not object that the grievances filed after January 18, 2017 "didn't exist," the court should "perceive that those grievances were exhausted" (Doc. 123, p. 3). This argument fails for the same reason.

Prather did not need to object at the Pavey hearing to Plaintiff's testimony that grievances filed after a certain date were directed against her. Assuming as true that later grievances *did* complain about Prather, the record clearly shows that those grievances were not exhausted. Plaintiff testified that he discarded duplicate grievances returned to him -- taking no further steps in the established process as to those grievances which mentioned Prather. The Court cannot just treat or construe the later grievances as fully exhausted.

Also under Argument I, Plaintiff points out that prison officials can render the grievance process unavailable if they do unfair things or otherwise engage in affirmative conduct to thwart the inmate from exhausting. This is absolutely true. However, there is no evidence in the record here to show any such conduct by Defendants, others at Centralia Correctional Center, or anyone in the IDOC system.

Plaintiff fares no better in opposing Prather's summary judgment motion under Argument II. Plaintiff begins with an accurate recitation of caselaw noting that on summary judgment, the district court views the facts and reasonable inferences in the light most favorable to the non-moving party, and summary judgment is not appropriate if there are genuine issues of material fact. Plaintiff asserts that he testified under oath to the existence of additional grievances (submitted to his counselors after January 2017 and directed against Prather). He reasons that because Prather did not present "affidavits to prove plaintiff wrong" on this point, that constitutes a material fact that gets him past summary judgment to a jury.

This is a logical argument that simply misunderstands the unique procedure for resolving Pavey-based motions. As explained above, a special process has been crafted for conducting Pavey hearings. Under this process, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey I*, **544 F.3d at 740-41.**

Stated another way, in Pavey hearings, the court can make credibility assessments of witnesses. *Pavey II*, **663 F.3d at 904.** There is nothing inappropriate about the district court resolving disputed fact issues in a Pavey hearing. As the Seventh Circuit reiterated five months ago: "At Pavey hearings, judges may hear evidence, find facts, and determine credibility." *Wilborn v. Ealey*, **881 F.3d 998, 1004 (7th Cir. 2018),** *citing Pavey II*, **663 F.3d at 904, and** *Pavey I*, **544 F.3d at 742.**[3]

Judge Williams cited the correct standards for summary judgment motions and Pavey hearings (*see* Doc. 120, pp. 13-17). And he properly applied both the general standards governing summary judgment and the specialized standards guiding evaluation of evidence in a Pavey hearing.

Finally, Plaintiff argues that Defendant Prather "waived her right to file for summary judgment" by missing the deadline imposed in the Court's November 13, 2017 Order (Doc. 42, p. 5). More than the *date* the Krebs/Meeks/Prather summary judgment motion was filed, Plaintiff takes issue with the statement in their January 16, 2018 motion for extension of time to move for summary judgment (Doc. 66, p. 1), which

---

[3] In assessing a magistrate judge's R&R following a Pavey hearing, the "district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations." *Goffman v. Gross*, **59 F.3d 668, 671 (7th Cir. 1995).**

reads as follows: "On November 13, 2017, this Court issued a Trial Practice Schedule, which set the Dispositive Motion deadline on the Issue of Exhaustion of Administrative Remedies as January 16, 2018." Plaintiff insists that the real deadline was January 12, 2018 not January 16, 2018, and he believes defense counsel engaged in deception or false pretenses in listing the January 16th date in their January 16th request for extra time.

Again, the Court understands perfectly the basis for Plaintiff's objection, but the objection is unavailing. Among other deadlines set out in Judge Williams' November 13, 2017 Order (Doc. 42) was the deadline for Pavey motions: "defendants shall have 60 days from the date of this Order to file a motion for summary judgment on the issue of exhaustion of administrative remedies." That Order was signed November 13th but not docketed (entered in the filing system and released to the parties) until November 15th. When the Order was docketed, the generic "60 days from this Order" language was replaced with a *specific* date certain (Doc. 42, emph. added):

> TRIAL PRACTICE SCHEDULE: Discovery due by 3/1/2019. Dispositive Motions due by 4/1/2019. ==Dispositive Motions re Exhaustion of Administrative Remedies due by 1/16/2018.== Signed by Magistrate Judge Stephen C. Williams on 11/13/2017. (amv) (Entered: 11/15/2017)

Defense counsel was entitled to rely on the specific deadline listed on the cm/ecf text entry attached to Judge Williams' Trial Practice Schedule order (Doc. 42). The Krebs/Meeks/Prather motion for extension of time correctly referred to the specific date listed on the docket sheet as the Pavey motion deadline. [To further clarify this for Plaintiff, the Clerk's Office will furnish him a copy of the public cm/ecf docket sheet showing the January 16, 2018 deadline associated with Docket Entry 42.]

Defendant Wexford filed its Pavey-based motion on January 16, 2018 (Doc. 63). Judge Williams granted Defendant Krebs', Meeks', and Prather's request for additional time and extended their Pavey motion deadline to January 30, 2018 (see Doc. 69). The Krebs/Meeks/Prather exhaustion-based summary judgment motion was timely filed on January 30, 2018. Nothing untoward or inappropriate occurred in the timing of the Pavey motions here.

E.  **CONCLUSION**

For all these reasons, the Court overrules Plaintiff's objections (Doc. 123), adopts in its entirety Judge Williams' R&R (Doc. 120), **DENIES** the motion for summary judgment filed by Defendant Wexford (Doc. 63), **GRANTS IN PART and DENIES IN PART** the motion for summary judgment filed by Defendants Krebs, Meeks, and Prather (Doc. 74), and **DISMISSES without prejudice** Plaintiff's claims against Defendant Prather for failure to exhaust administrative remedies prior to filing this suit.

Following entry of this Order, one motion remains pending, Plaintiff's June 5, 2018 request for transcripts (Doc. 119), which will be ruled on by Judge Williams.

IT IS SO ORDERED.

DATED: July 5, 2018

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge